UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RITA SCORPIO,
        Plaintiff,

v.                                                                                     C.A. No. 10-325 ML

UNDERWRITERS AT LLYOD'S, LONDON,
        Defendant.

## MEMORANDUM AND ORDER

Plaintiff, Rita Scorpio ("Plaintiff") seeks a declaration from this Court that an insurance policy issued to her by Defendant, Underwriters at Lloyd's, London ("Defendant") provides coverage for damage to her property. The matter is before the Court on cross motions for summary judgment.

### I. Background

Defendant issued Plaintiff an insurance policy which provides property and liability coverage on a building located at 21 Spruce Street ("building") in Providence, Rhode Island. The policy was in effect from August 31, 2007, to August 31, 2008. The building consists of 6 residential apartment units. On or about July 24, 2008, the Providence area experienced heavy rain storms. At some unknown point prior to the storms, a tennis ball became lodged in the roof downspout at the building. As a result of the blocked downspout, rain water from the storms accumulated on the roof and entered the building through an access hatch on the roof. The water is alleged to have caused structural damage and other damage to the interior of the building.

Thomas Souls ("Souls"), an engineer retained by Plaintiff, inspected the building after the

storms and determined that the main roof girder "fractured and permanently deflected about 6 [inches]. . . ." Plaintiff's Statement of Undisputed Facts, Exhibit B at 3. Souls also found that the "central portion of the roof . . . collapsed and is being held up by the interior walls that are not capable of supporting the roof . . . ." Id. at 4. Souls determined that the "support of the roof was passed on to the plastered stud walls and the . . . [plaster] buckled . . . from the collapsed roof loading." Id. Souls concluded that the sudden fracture of the main roof girder "caused an instantaneous [approximate] 6 [inch] drop of the roof. . . ." Id.[1] The Providence Department of Inspection and Standards inspected the building after the date of the alleged loss and concluded that the building was unsafe to be occupied. At all times after the loss, the building remained standing. On or about October 15, 2008, Defendant informed Plaintiff that it was denying coverage.

A. Pertinent Policy Provisions

The policy provides that Defendant "will pay for direct physical loss of or damage to [c]overed [p]roperty . . . caused by or resulting from any [c]overed [c]ause or [l]oss." Defendant's Motion for Summary Judgment, Exhibit 4 at 7. The policy, however, also provides that Defendant "will not pay for loss or damage caused directly or indirectly by[:]"

> Water
> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> (2) Mudslide or mudflow,
> (3) Water that backs up or overflows from a sewer, drain or sump, or
> (4) Water, under the ground surface pressing on, or flowing or seeping through:

---

[1] For purposes of the cross motions only, Defendant presumes that a roof girder fractured resulting in a six-inch deflection of the roof. Defendant maintains, however, that the building did not collapse as the term "collapse" is defined in the insurance policy.

2

        (a) Foundations, walls, floors, or paved surfaces;
        (b) Basements, whether paved or not; or
        (c) Doors, windows, or other openings[.]

Id. at 31, 32 (emphasis added). The policy also excludes coverage for "[c]ollapse, except as provided . . . in the [a]dditionl [c]overage for [c]ollapse." Id. at 33. The additional coverage for collapse provides:

> The term [c]overed [c]ause of [l]oss includes the [a]dditional [c]overage – [c]ollapse as described and limited . . . below.
>
> 1. With respect to buildings:
>     a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
>     b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
>     c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
>     d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
>
> 2. We will pay for direct physical loss or damage to Covered Property, caused by a collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by . . .
>
>         e. Weight of rain that collects on a roof[.]

Id. at 36.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder

3

could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the initial burden of showing the Court that no genuine issue of material fact exists. Id. Once the moving party makes this showing, the nonmoving party must point to specific facts demonstrating a trialworthy issue. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted). Fed. R. Civ. P. 56 "requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment." Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998). Evidence that "is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005) (internal quotation marks and citation omitted).

### III. Analysis

In construing an insurance policy, the court gives the terms of the policy their plain and ordinary meaning. Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249 (R.I. 2003). The "test to be applied is not what the insurer intended, but what the ordinary reader and

4

purchaser would understand them to mean." Id. at 1259. Contract language is ambiguous only when it is "reasonably and clearly susceptible of more than one interpretation." Id. (internal quotation marks and citation omitted). If the Court finds the terms of a contract to be unambiguous, the parties are bound by the plain and ordinary meaning of the contract terms. Id. Although a court should not engage in "mental or verbal gymnastics" to "hurdle" the plain meaning of the policy language, if the terms of the policy are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured. American Commerce Insurance Co. v. Porto, 811 A.2d 1185, 1193 (R.I. 2002).

An "exclusion from coverage in [an] . . . insurance policy must be clear and unambiguous." Id. at 1192 (internal quotation marks and citation omitted). Defendant has the burden of proving that an exclusion applies. City of East Providence v. First American Title Insurance Co., No. CA 10-199 ML, 2011 WL 5521246 (D.R.I. Oct. 13, 2011), report and recommendation adopted, CA No. 10-199 ML, 2011 WL 5527604 (D.R.I. Nov. 14, 2011). Exclusionary clauses in insurance contracts are strictly interpreted. Allstate Insurance Co. v. Greloch, No. 11-015 ML, 2011 WL 4351630 (D.R.I. Sept. 14, 2011).

### A. Water Exclusion

Plaintiff contends that the water exclusion is limited in application to "flood type water coming into the premises from the ground level . . . ." Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment at 3. Defendant argues that the language of the exclusion is clear and that the policy does not cover loss or damage caused by water that backs up or overflows from a drain. Defendant contends that the exclusion is not limited in application to only flood-type water coming into the premises from the ground level.

5

The policy provides that Defendant will not pay for loss or damages caused directly or indirectly by water "that backs up or overflows from a . . . drain . . . ." Defendant's Motion for Summary Judgment, Exhibit 4 at 32. The Court finds this language to be clear and unambiguous. The exclusion is titled "[w]ater" and it is not limited in any manner to ground level flooding. Moreover, the plain and ordinary meaning of the word "drain" is not so limited. See generally Newlo Realty Co. v. U.S.F. & G. Corp., 213 A.D.2d 295, 624 N.Y.S.2d 33 (1st Dept. 1995); see also Random House Unabridged Dictionary 593 (2d ed. 1993) (a drain is "something, as a pipe or conduit, by which a liquid drains"). The roof downspout, a drain, had a tennis ball in it, which, with the ensuing rain storm, caused the drain to "back[] up or overflow." Defendant's Motion for Summary Judgment, Exhibit 4 at 32. Thus, the alleged water damage is clearly excluded pursuant to the unambiguous policy language.[2]

## B. Collapse

Plaintiff argues that the structural damage to the building is a covered loss because the center roof beam fractured causing a collapse of the roof due to the weight of the rain that collected on the roof. Plaintiff concludes that a "part of the building," the roof, suffered a caving in or collapse. Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment at 7. Defendant argues that the roof's "deflect[ing]" or "dropping" approximately six inches does not constitute collapse under the relevant policy language. Defendant's Reply Memorandum at 7.

The policy provides that Defendant will not pay for loss or damage caused directly or

---

[2]Defendant also argues that a rain limitation provision of the insurance policy excludes coverage for the water damage. Because the Court finds that the water damage is excluded under the water exclusion, the Court need not determine whether or not the rain limitation also excludes coverage for the water damage.

6

indirectly by "[c]ollapse, except as provided . . . in the [a]dditional [c]overage for [c]ollapse."
Defendant's Motion for Summary Judgment, Exhibit 4 at 33. As noted above, the additional coverage section provides

> a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
> b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
> c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
> d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
>
> 2. We will pay for direct physical loss or damage to Covered Property, caused by a collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by . . .
>
> > e. Weight of rain that collects on a roof[.]

Id. at 36.

Plaintiff contends that the term "collapse" is ambiguous and that the Court should construe the term against Defendant and hold that because a part of the building, the roof, collapsed or caved in, the policy provides coverage. Plaintiff argues that the policy provides coverage for the collapse of the roof due to the weight of rain. She further argues that the building need not be in a "flattened form of rubble" in order to recover.[3] Plaintiff's Objection to Defendant's Motion for Summary Judgment at 8. Defendant argues that the term "collapse" is

---

[3]In support of her position Plaintiff relies, in part, on Campbell v. Norfolk & Dedham Mutual Fire Insurance Co., 682 A.2d 933 (R.I. 1996). The insurance policy in Campbell did not define the term collapse. Id. In this matter the policy defines the term. Campbell, therefore, does not assist Plaintiff.

7

unambiguously defined in the policy and that the policy should be interpreted as written. Further, Defendant contends that the damage to the building did not meet the policy's definition of the term "collapse" because the building did not abruptly fall down or cave in and was still standing.

Subsection (a) of the collapse provision provides that "[c]ollapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose[.]" Defendant's Motion for Summary Judgment, Exhibit 4 at 36. Further, subsection (d) of the collapse provision states: "A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion." Id.

Several courts have reviewed the same policy language or substantially similar language and determined that the language is unambiguous. In Mount Zion Baptist Church of Marietta v. Guideone Elite Insurance Co., 808 F. Supp. 2d 1322 (N.D. Ga. 2011), the court found that the collapse provision was unambiguous and held that because the building was still standing there was not a collapse as that term was defined in the policy. Id. at 1325 (construing language similar to subsections (a) and (d)). Likewise, in Rector St. Food Enterprise, LTD. v. Fire & Casualty Insurance Co. of Connecticut, 35 A.D.3d 177, 827 N.Y.S.2d 18 (1st Dept. 2006), the court found that the collapse language was unambiguous and held that there was not a collapse because, although the building was sinking and leaning, it was still standing. Id. (construing language similar to subsections (a) and (d)); see also Rapp B. Properties, LLC v. RLI Insurance Co., 65 A.D.3d 923, 885 N.Y.S.2d 283 (1st Dept. 2009) (the court held that the collapse provision was unambiguous and did not cover imminent collapse where building was still

8

standing) (construing the same language).

Other courts that have considered the same or similar policy language have determined it to be ambiguous. In Landmark Realty, Inc. v. Great American Insurance Co., Civil No. JKS 10-278, 2010 WL 5055805 (D. Md. Dec. 3, 2010), part of an apartment building collapsed and was condemned. Id. At *1-2 (construing same language). Because the partial collapse resulted in the entire building becoming unsuitable for its intended purpose, the court found an internal inconsistency between subsection (a) (which provided coverage for partial collapse causing the building to be unsuitable for its intended purpose) and subsections (b) and (c) (which excluded coverage for imminent collapse and excluded coverage if the building was still standing). Id. at *5 The court concluded that the "conflicting results produced by application of [subsections (a), (b), and (c)] created an ambiguity" which precluded summary judgment. Id. In a similar vein, another court held that the collapse provision was ambiguous, because, as a result of the occupancy restriction in subsection (a), it was "far from clear that the Policy requires total destruction in order for collapse to occur." Malbco Holdings, LLC v. AMCO Insurance Co., 629 F. Supp. 2d 1185, 1196 (D. Or. 2009) (construing same language). The Malbco court found that only subsection (a) defined the term "collapse" and that the remaining subsections served "merely to clarify other situations in which a building is not in a state of 'collapse' . . . ." Id. at 1195. The court also determined that because both subsections (c) and (d) excluded certain conditions from a state of collapse when a building was still standing, the policy language implied that a building may still be standing yet still be in a state of collapse. Id. at 1196-97.

This Court finds the rationale of Landmark Realty and Malbco Holdings to be persuasive. In this instance, part of a building, the roof, deflected approximately 6 inches causing the

building to be unsuitable for occupancy. Thus, subsection (a) of the collapse provision, arguably, affords coverage. In addition, however, because the building was still standing, subsections (b) or (d) may be read and understood to preclude coverage. See generally Landmark, 2010 WL 5055805 at *5. In light of this ambiguity, the Court finds that the cross motions for summary judgment on the collapse issue must be denied. Id.

### C. Loss of Rental Income

Plaintiff also claims loss of rental income because the tenants of the building had to move out for a period of time after the alleged loss. The policy provides coverage for loss of rental income through the "Business Income (and Extra Expense) Coverage Form." Defendant's Motion for Summary Judgment, Exhibit 4 at 21. The policy provides that Defendants

> will pay for the actual loss of Business income . . . sustain[ed] due to the necessary 'suspension' of . . . 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss of or damage to [the building] . . . . The loss or damage must be caused by or result from a Covered Cause of Loss.

Id. (emphasis added). The policy states that in order for Plaintiff to recover, the loss of rental income must be caused by or result from a covered cause of loss. The question of whether Plaintiff is entitled to loss of rental income is dependent on whether the alleged "collapse" is covered under the policy. Consequently, because the Court has denied summary judgment on the collapse issue it must also deny summary judgment on the loss of rental income question.[4]

### D. Bad Faith

Plaintiff alleges that Defendant acted in bad faith in denying the claim. Plaintiff contends

---

[4] Likewise, because the Court denied the motions concerning the collapse issue, the Court must also deny the motions with respect to the breach of contract claim.

that Defendant failed to properly investigate the claim. Defendant denies the allegation of bad faith.

As early as four days after the loss, Defendant's claim's representative forwarded Plaintiff a letter informing Plaintiff that he had inspected the building and that there were "questions whether coverage under [the] policy applies to this occurrence." Plaintiff's Statement of Undisputed Facts, Exhibit E at 1. The letter noted both the water exclusion and the rain limitation and advised Plaintiff that there may be "other reasons why coverage does not apply." Id. at 2. That letter also informed Plaintiff that the claims representative had inspected the roof and did not "detect any visible damage. . . ." Id. at 1. Within a month of the incident, both Plaintiff and Defendant had each engaged an engineer to investigate the claim. In October 2008 Defendant forwarded Plaintiff a letter denying coverage noting the water exclusion, rain limitation, collapse and business income provisions of the policy.

In order for Plaintiff to succeed on her bad faith claim she must "demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation." Skaling v. Aetna Ins. Co., 799 A.2d 997, 1012 (R.I. 2002). The Court must determine whether there is "sufficient evidence from which reasonable [minds] could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." Id. at 1011 (internal quotation marks and citation omitted).

Defendant's actions do not even approach the bad faith standard. The record reflects that Defendant acted in a reasonable manner by timely and appropriately investigating the claim,

11

engaging its own expert, and reviewing the appropriate information, including Plaintiff's engineer's report, before denying the claim. Defendant's denial letter noted the pertinent policy provisions and that the policy provided that a building that is still standing is not considered to be in a state of collapse. Defendant's actions, in addition to the Court's conclusion that the collapse provision is ambiguous and thus the claim is fairly debatable, leads this Court to conclude that Plaintiff's bad faith claim cannot survive Defendant's motion for summary judgment.[5] See generally Imperial Casualty and Indemnity Co. v. Bellini, 947 A.2d 886 (R.I. 2008) (insurer is entitled to dispute a claim that is fairly debatable).

IV. Conclusion

For the foregoing reasons, with respect to the complaint, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied with respect to the water exclusion provision (part of count I) and Plaintiff's bad faith claim (count III). The motions for summary judgment are denied with respect to coverage under the collapse provision (part of count I), coverage under the loss of rental income provision (part of count I), and the breach of contract claim (count II).

In addition, for the foregoing reasons, with respect to Defendant's counterclaim, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied with respect to the water exclusion provision (counterclaim count I). The

---

[5]Plaintiff argues that Defendant's failure to properly investigate the claim is shown by Defendant's failure to investigate vandalism as a possible cause for the tennis ball being on the roof. Plaintiff however has not presented any evidence of vandalism. "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." Thomas v. Metropolitan Life Insurance Co., 40 F.3d 505, 508 (1st Cir. 1994). The Court need not "credit purely conclusory allegations, indulge in rank speculation, or draw improbable inferences." National Amusements, 43 F.3d at 735.

motions for summary judgment are denied with respect to coverage under the collapse provision (counterclaim count II) and coverage under the loss of rental income provision (counterclaim count III).

SO ORDERED.

/s/ Mary M, Lisi
Mary M. Lisi
Chief United States District Judge
June 5, 2012